# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**GERALD FORSYTHE, MICHELLE R.**
**FAWCETT, MARSHA FOURNIER, MONICA**
**BRESLOW, MELISSA S. FORSYTHE, and**
**JOHN W. SALYER, JR.,**

        **Plaintiffs,**

        **Case No. 04 C 5361**

**vs.**

**BLACK HILLS CORPORATION,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case arises from the acquisition in 2000 of Indeck Capital, Inc., an independent power-generation business, by Black Hills Corporation, a public company also in the business of generating electric power. Plaintiffs are the former shareholders of Indeck Capital. They have sued Black Hills over what they allege are breaches of the Merger Agreement by which Black Hills took control of Indeck Capital, as well as breaches of an implied duty of good faith and fair dealing that plaintiffs claim arose in connection with that agreement and Black Hills' alleged negligent spoliation of evidence material to this dispute. Black Hills has moved the Court for summary judgment on all claims in plaintiffs' second amended complaint. Plaintiffs have filed a cross-motion in which they ask for summary judgment as to liability on all of their claims. For the reasons set forth below, the Court grants Black Hills' motion with respect to counts 2, 4, and

7 of plaintiffs' second amended complaint and otherwise denies the motion and denies plaintiffs' motion in its entirety.

## Background

In 2000, plaintiffs Gerald Forsythe, Michelle Fawcett, Marsha Fournier, Monica Breslow, Melissa Forsythe, and John Salyer, Jr. sold Indeck Capital, Inc., a power-generation business whose stock they owned, to defendant Black Hills Corp. The Merger Agreement governing the sale provided for an immediate payment to plaintiffs plus contingent "earn-out" consideration to be issued over the ensuing four years. Specifically, the earn-out consideration for each of the four years was to be based on a percentage of the net income of Black Hills Generation Company ("Generation" or "earn-out entity"), the entity that took over Indeck Capital's operations under Black Hills' umbrella. Black Hills stock equivalent in value to thirty-five percent of Generation's net income was to be paid to plaintiffs after each of the four years, with an absolute upward limit of $35 million worth of that stock. Plaintiffs allege, among other things, that Black Hills artificially depressed Generation's income by saddling it with intercompany loans that plaintiffs say did not really exist or, at a minimum, carried artificially high interest rates. This and related actions by Black Hills, plaintiffs assert, violated the express terms of the Merger Agreement or, in the alternative, an implied duty of good faith and fair dealing that they contend Black Hills owed the former Indeck shareholders. Plaintiffs also allege that Black Hills engaged in negligent spoliation of evidence material to this dispute.

Plaintiffs' second amended complaint names only Black Hills as a defendant. Various Black Hills officers and former officers were named as defendants in an earlier version of the complaint; in March 2007, the Court dismissed for failure to state a claim a fraudulent

misrepresentation claim against those individual defendants, leaving only claims against Black Hills. The second amended complaint, which plaintiffs filed in August 2007, does not assert any new claims against the individual Black Hills officers.

The second amended complaint includes seven claims. Counts 1 through 5 are claims of breach of contract that relate to specific provisions of the Merger Agreement. The first four counts allege breaches in the form of Black Hills' conduct of Generation and its calculation of the earn-out consideration. In count 1, plaintiffs allege that Black Hills breached its obligation to cause Generation to be run in a "reasonably prudent manner" by saddling it with insufficiently documented debt that, they contend, was not really debt at all. If this debt was real, plaintiffs contend in the alternative, then Black Hills put insufficient equity into Generation. In count 2, plaintiffs allege that Black Hills caused Generation to enter into material transactions with affiliates—i.e., other Black Hills entities—on terms less favorable to it than it could have obtained from unrelated entities. In count 3, plaintiffs allege that Black Hills took several actions intended to reduce the earn-out consideration paid to them. In count 4, plaintiffs allege that Black Hills violated the Merger Agreement's provisions that required Black Hills to "assume" and "satisfy" two of Indeck's pre-merger financial obligations.

In count 5, their final breach of contract claim, plaintiffs allege that Black Hills violated a Merger Agreement provision that required it to make available work papers underlying Generation's financial statements during the earn-out years. They also allege defendants violated a provision that guarantees plaintiffs' access to certain books and records of Generation in the event of a dispute over the earn-out calculation. Black Hills lost or was too quick to destroy e-mail back-up tapes and other materials, plaintiffs allege. Count 6 is a related spoliation

claim premised on what plaintiffs assert was Black Hills' common law duty to preserve evidence once this dispute became reasonably foreseeable.

Count 7 claims a breach of Black Hills' implied duty of good faith and fair dealing. In this claim, argued in the alternative to other claims, plaintiffs contend that, to the extent the Court determines Black Hills did not breach specific provisions of the Merger Agreement, its alleged misconduct should be remedied under this theory.

## Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). Because the Court is presented with cross-motions for summary judgment in this case, it must consider each party's motion separately and draw all reasonable inferences against the party whose motion is under consideration. *See Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003) (*citing Brownlee v. City of Chicago*, 983 F. Supp. 776, 779 (N.D. Ill. 1997)).

## A.      Alleged breach of section 7.7(i) of the Merger Agreement (count 1)

In count 1 of the second amended complaint, plaintiffs allege that Black Hills violated a term of the Merger Agreement that required Black Hills to run Generation during the earn-out period in "a reasonably prudent manner" and to take actions Generation's board of directors

deemed beneficial to Generation's business. (In full, section 7.7(i) provides that, during the earn-out period, "[Generation] shall and [Black Hills] shall cause [Generation] to operate and manage the business of [Generation] in a reasonably prudent manner and shall take such actions that the Board of Directors deems beneficial to the business and operations of [Generation] during such period.") Plaintiffs allege that Black Hills failed to observe corporate formalities in documenting and authorizing intercorporate borrowing by Generation and other transfers. Moreover, plaintiffs contend, Black Hills made these transfers without regard for whether they would benefit the business and operations of Generation, effectively treating Generation as a "piggy bank." This loose flow of funds in and out of Generation, plaintiffs allege, shows that Generation's intercompany debt was really equity and that no interest expense should have been subtracted from its earnings. In the alternative, plaintiffs allege, if Generation was legitimately indebted to affiliates, then Black Hills failed to provide it with enough equity capital for the earn-out entity to be run prudently or in a way that helped its business. Plaintiffs allege that they were injured to the extent Black Hills' actions undercut the earn-out consideration plaintiffs would otherwise have received.

Under Delaware law, which governs the Merger Agreement, the elements of a breach of contract are the existence of a valid contract, breach of an obligation under that contract, and damages to the plaintiff from the breach. *See, e.g.*, *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). The parties do not dispute that the Merger Agreement satisfies the first of these elements. For each side's motion, therefore, the Court will focus on the issues of breach and damages.

With regard to the issue of breach, neither side has attempted to delineate the meaning of "reasonably prudent" as it is used in section 7.7(i). The parties' respective arguments therefore

reduce to assertions that Black Hills' conduct of Generation did or did not meet a standard whose contours they have made little effort to help the Court define. The Court declines to grant either side's motion for summary judgment under these circumstances.

The Court does, however, take the view that by its express terms, section 7.7(i) required Black Hills to pay particular attention to the business interests of Generation in their own right and not merely treat Generation as it would any other of its subsidiaries. This contractual duty is complementary to but distinct from the one contained in section 7.7(v), which bars Black Hills from taking any actions designed to avoid paying plaintiffs the earn-out consideration they are owed (and which the Court examines separately below). A reasonable jury could conclude that section 7.7(i) was breached by one or more aspects of Black Hills' conduct of Generation's affairs under some concept of reasonable prudence. Conversely, a reasonable jury might *not* draw this inference in plaintiffs' favor. On the evidence and legal arguments now before it, the Court cannot say. For this reason, the Court denies both parties' motions for summary judgment as to count 1 of the second amended complaint.

**B.      Transactions between Generation and affiliates on terms allegedly less favorable than Generation could have obtained from third parties (count 2)**

In count 2 of the second amended complaint, plaintiffs allege that Black Hills violated the Merger Agreement's prohibition on material transactions between Generation and affiliates whose terms were less favorable than what Generation could have obtained from unrelated parties. (In full, section 7.7(iii) provides that, during the earn-out period, Black Hills was to cause the earn-out entity to "refrain from entering into material transactions with affiliates of the Company unless such transactions are on terms and conditions no less favorable (when all aspects of the transactions are considered) to the Company than could be obtained from non-

6

related parties.")  Specifically, plaintiffs claim that in 2001 Black Hills prevented Generation from drawing directly on a credit facility that Black Hills obtained in connection with the merger and instead forced Generation to borrow funds from an affiliate, WRDC, that WRDC had borrowed directly under this credit facility.  In the second amended complaint, plaintiffs allege WRDC lent these funds to Generation at a premium over the rate the bank charged WRDC.

To prevail on a breach of contract claim, Delaware law requires a valid contract, breaching conduct, and damages to the plaintiff from the breach.  *See VLIW Technology*, 840 A.2d at 612.  As with count 1, the parties do not dispute that the Merger Agreement satisfies the first of these elements; accordingly, the Court will focus on the issues of breach and damages.

### 1.      Defendant's motion

Black Hills' principal argument for why it deserves summary judgment on this count is that plaintiffs' allegation that WRDC charged a premium rate is demonstrably false.  Because WRDC did not charge Generation a premium, Black Hills argues, there is neither a breach of section 7.7(iii) nor any damage to plaintiffs.  Black Hills also argues that there is no evidence that Generation could have obtained credit on any better terms than those it obtained from WRDC.

Plaintiffs now appear to concede that WRDC never charged Generation a premium rate, but they speculate that Black Hills itself may have done so when, after April 2001, it supplanted WRDC and Generation as the primary borrower on a new ABN-AMRO credit facility.  They also argue Black Hills did not investigate whether Generation could have obtained a lower rate of interest from unrelated parties and did not try to reconcile its duty under section 7.7(iii) with its decisions to charge Generation an "all-in" corporate interest rate and allot to Generation a

corresponding share of corporate overhead. Plaintiffs do not, however, point to evidence that would ground an inference in their favor. Their arguments are thus entirely speculative. If the moving party has shown the absence of any genuine issue of material fact, then the non-movant's "response must . . . set out specific facts showing a genuine issue for trial" to avoid summary judgment. Fed. R. Civ. P. 56(e)(2). Speculation alone will not defeat the motion. *See, e.g.*, *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 112 (7th Cir. 1990). Black Hills is accordingly entitled to summary judgment on this count of plaintiffs' claim.

### 2. Plaintiffs' motion

Because the Court has determined that Black Hills is entitled to summary judgment on this count of plaintiffs' complaint, the Court denies plaintiffs' motion on that same claim.

## C. Alleged intentional steps to avoid paying earn-out consideration (count 3)

In count 3 of the second amended complaint, plaintiffs allege that Black Hills violated section 7.7(v) of the Merger Agreement, which proscribes actions by Black Hills intended to reduce the earn-out consideration paid to plaintiffs. (In full, section 7.7(v) requires Black Hills to "refrain from intentionally taking any action to avoid the payment of the Earn-Out Consideration" during the earn-out period, i.e., from the closing date of the merger until December 31, 2003.) Among other allegations, plaintiffs claim that Black Hills refused to capitalize Generation with sufficient equity; caused it to incur excessive debts; made unilateral, retroactive changes to the earn-out calculations that were not authorized by the Merger Agreement; and destroyed and blocked access to the books and records of Generation. All of these actions, plaintiffs allege, were part of a scheme to undercut the earn-out.

1.      **Defendant's motion**

In support of its motion, Black Hills argues that "legitimate business reasons" underlie each of the practices or transactions that plaintiffs allege were intended to depress the earn-out consideration they received. Black Hills further argues that plaintiffs cannot make the requisite showing of intent to depress earn-out consideration on the part of any Black Hills officer, director, or employee.

The Court determines that genuine issues of material fact exist on the question whether defendants breached section 7.7(v) of the Merger Agreement. Specifically, a reasonable jury could find that Generation's all-debt capital structure and the placement of the former Indeck Capital debt on Generation's books following the merger were intended to reduce earn-out consideration and that Black Hills' destruction of certain documents was designed to limit plaintiffs' ability to challenge Black Hills on this score. Further, a reasonable jury could determine that the earn-out adjustments—although nominally designed to compensate for the effect of Generation's debt-heavy capital structure—were part of a broader scheme to reduce earn-out compensation.

With regard to the debt Generation took on after the merger, Black Hills argues that it was entitled to capitalize its new subsidiary in the manner it saw fit and that it was justified in placing Indeck Capital's former debts on Generation's books for the same reason.[1] Given the obvious impact of debt and the attendant interest expense on Generation's net income and thus on the earn-out, however, this argument does not carry the day, at least for purposes of summary judgment. The Court has already indicated that section 7.7(i) required Black Hills to be mindful

---

[1] As discussed below, plaintiffs' claim for breach of merger agreement's requirements that Black Hills "assume" and "satisfy" the former Indeck debt does not survive summary judgment. The Court does, however, take the view that Black Hills' treatment of this debt is also an aspect of plaintiffs' claim for breach of section 7.7(v).

of Generation's business interests in their own right and not merely treat Generation as it would any other of its subsidiaries—notwithstanding Black Hills' argument that the word "cause" in section 7.7 confers both control and total discretion on the parent company. As the Court reads the Merger Agreement, the duty imposed by section 7.7(i) is meant to complement the one imposed by section 7.7(v). As a result, a reasonable jury could conclude that, Black Hills' prerogatives as Generation's corporate parent notwithstanding, its saddling of Generation with intercompany and acquisition debts was designed to reduce the earn-out consideration plaintiffs received and therefore violated section 7.7(v).

The Court examines Black Hills' allegedly improper destruction of e-mail backup tapes and employee workstations below, in connection with counts 5 and 6. For purposes of the alleged breach of section 7.7(v), the Court determines that a reasonable jury could find these actions were designed to help Black Hills cover up intentional acts aimed at undercutting the earn-out consideration. Independent of questions about spoliation of evidence or breach of the parties' agreement to share information in the event of an earn-out dispute, a reasonable jury could find that e-mail exchanges between key Black Hills personnel during the earn-out period contained evidence of such a cover-up. This is enough for plaintiffs to avoid summary judgment on this point.

With regard to intent, Black Hills insists that there is no evidence that will allow plaintiffs to make the showing necessary to prove a breach of section 7.7(v). Black Hills presumably means that there is no direct evidence of intent. The Merger Agreement, however, does not specify any particular method of proof of intent. The Court determines that a reasonable jury could infer intent from the circumstances of the various transactions and practices that are the focus of this count. One key, overarching circumstance is the conflict of

interests that inheres in an earn-out arrangement such as the one plaintiffs and Black Hills put in place.  In *LaPoint v. AmerisourceBergen Corp.*, No. Civ. A. 327-CC, 2007 WL 2565709 (Del. Ch. Sept. 4, 2007), the Delaware Court of Chancery found that defendant, although barred specifically from undercutting the earn-out payments to the former shareholders of its newly acquired subsidiary, had supported the subsidiary's business only in "those instances when it was in the interests of [defendant's] shareholders to do so.  When [defendant's] interests conflicted," the court concluded, the duty to support the acquired firm's business and thereby expand the earn-out consideration "was quietly set aside."  *Id.* at *5.

In any event, the Delaware case Black Hills cites for the meaning of intent makes it clear that "[a]s a general, rule, when an ultimate fact to be determined is one of intention, summary judgment is inappropriate."  *Layfield v. Beebe Med. Ctr., Inc.*, No. Civ. A. 95-C-12-0071997 WL 716900, *5 (Del. Ch. July 18, 1997) (*citing Murphy v. Godwin*, 303 A.2d 668 (Del. 1973)).  For these reasons, the Court denies Black Hills' motion for summary judgment on count 3.

## 2.    Plaintiffs' motion

Although genuine issues of material fact exist with regard to count 3, such that Black Hills is not entitled to summary judgment, plaintiffs have not shown that they are therefore entitled to summary judgment.  A reasonable jury could find that Black Hills did not violate section 7.7(v)—for example, by determining that its decisions about Generation's capital structure were made with a view to its subsidiary's best financial interests only.  Accordingly, the Court denies plaintiffs' motion on count 3.

**D.      Alleged failure to "assume" and "satisfy" Indeck Capital debts (count 4)**

In count 4 of the second amended complaint, plaintiffs allege that Black Hills violated sections 8.2(d) and (e) of the Merger Agreement, which required Black Hills to "assume" and "satisfy" two different debts owed by Indeck Capital prior to or at the closing of the merger, as a condition for Indeck Capital's obligations to consummate "the Merger and the transactions contemplated by th[e] Agreement."  (In full, section 8.2 made the receipt of "satisfactory evidence that [Black Hills] has assumed [Indeck Capital's] debt to First Chicago Bank (the 'First Chicago Bank Debt') in the approximate amount of $22,000,000" and "satisfactory evidence that [Black Hills] has satisfied the obligation of [Indeck Capital] to Indeck Energy (the 'Indeck Energy Debt') in the approximate amount of $17,000,000" conditions to Indeck Capital's obligations to consummate the merger and other transactions contemplated by the Merger Agreement.)  Plaintiffs allege that Black Hills' decision, immediately after the merger, to park Indeck Capital's old debts with Generation breached sections 8.2(d) and (e).

**1.      Defendant's motion**

In support of its motion, Black Hills argues that sections 8.2(d) and (e) were merely conditions to consummation of the Merger Agreement.  Therefore, Black Hills argues, plaintiffs' remedy for failure of these conditions was to decline to perform its obligations under the agreement—not to consummate the deal and then sue for breach.  This argument is consistent with Delaware contract law.  *See Summit Investors II, L.P. v Sechrist Indus., Inc.*, No. Civ.A. 19400, 2002 WL 31260989, *7 (Del. Ch. Sept. 20, 2002) ("although failure of a condition may excuse a party's performance, it does not give rise to money damages.").  Black Hills further argues that section 8.2 did not prevent it from "handling internally the refinancing of the Indeck

debt as it deemed appropriate" and that placing the debt with Generation was a perfectly legitimate accounting treatment of this debt. Defs.' Br. at 16.

Plaintiffs concede that section 8.2 sets forth conditions but argue that it makes assumption and satisfaction of the former Indeck debts conditions to both the merger itself and other "transactions contemplated by the agreement." That, they argue, can only mean payment of the earn-out. This argument appears to cut against plaintiffs, however. Because plaintiffs are the payees in the only other contemplated transaction they identify, if their interpretation were correct, Black Hills' alleged failure to assume and satisfy the former Indeck Capital debts would mean that its obligation to pay *any* earn-out consideration was not triggered. Plaintiffs do not take their argument this far, yet this is its logical end. At best, it sits awkwardly with plaintiffs' position in this case. In short, plaintiffs' argument on this point is insufficient to avoid summary judgment.

The Court determines that no reasonable jury could find in plaintiffs' favor on their claim for breach of section 8.2(d) or (e). Even if one assumes that Black Hills did not comply with these sections, no action for breach lies because—as plaintiffs' own argument concedes—they are conditions, and thus an action for breach is not the appropriate remedy. For this reason, Black Hills is entitled to summary judgment on count 4 of plaintiffs' second amended complaint.

### 2. Plaintiffs' motion

The Court has granted Black Hills' motion for summary judgment on this count, and therefore denies plaintiffs' cross-motion for summary judgment on the same count.

**E.       Alleged destruction of evidentiary materials (count 5)**

In count 5 of the second amended complaint, plaintiffs allege that Black Hills violated sections 2.3 and 2.6 of the Merger Agreement, which respectively required Black Hills to provide "access for all work papers underlying . . . Earn-Out Period Financial Statements" and, in the event of an earn-out dispute, to provide "full access to the books, records, facilities, and employees" of Generation.  Among other allegations, plaintiffs claim that Black Hills allowed numerous e-mail back-up tapes to be destroyed before preservation periods set by an internal corporate policy had expired; destroyed other tapes whose preservation periods had expired, but destroyed them only after this suit was filed; and failed to preserve computer workstations of six allegedly "key" employees of Generation.

**1.       Defendant's motion**

In support of its motion, Black Hills cites this Court's March 2005 ruling that the scope of section 2.3 is limited to the principal records of the work Generation's auditors performed. This ruling, Black Hills correctly observes, is the law of the case under *Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999).  Plaintiffs have not filed a motion to reconsider this ruling.

Moreover, plaintiffs' suggestion that the Court was somehow misled because Black Hills drafted its own financial statements, and that Black Hills-generated documents are therefore "work papers underlying the applicable Earn-Out Period Financial Statements" covered by section 2.3, suggests some confusion about how auditing works.  It is entirely commonplace for the reporting entity to prepare its own financial statements; the auditor's role is to opine on whether the statements conform to the relevant set of accounting principles.  Plaintiffs' effort to

expand the coverage of section 2.3 via this argument is unpersuasive. As a result, to the extent count 5 implicates section 2.3 of the Merger Agreement, summary judgment is appropriate.

Section 2.6, however, is a different matter. Black Hills makes two main arguments that concern this provision. First, it argues, section 2.6 does not create a duty to preserve or provide evidence in this litigation, because it applies only in earn-out disputes, which the Merger Agreement makes subject to arbitration. Second, Black Hills contends, section 2.6 covers only "traditional forms of books and records, such as journal entries and other accounting records" and not e-mail tapes and employee workstations. Defs.' Mem. at 18.

The Court has already rejected the first of these arguments. In its March 2007 order, the Court denied Black Hills' motion to dismiss an identical count for breach of section 2.6. The Court ruled that

> [Plaintiffs] have a viable claim for breach of section 2.6 of the Merger Agreement, which unlike section 2.3 is not limited to auditors' work papers. The Court rejects Black Hills' contention that this claim amounts to a mere "discovery issue[]" that is appropriately before the arbitrator who is dealing with the accuracy of the [earn]-out financial statements pursuant to the Court's July 2005 order . . . Black Hills' compliance with section 2.6 is not the type of dispute that section 2.5 of the Merger Agreement says is to be determined by an independent accounting firm acting as arbitrator.

*Forsythe v. Black Hills Corp.*, No. 04 C 5361, 2007 WL 805217, *8 (N.D. Ill. Mar. 12, 2007). That is, the Merger Agreement does not appear to give the arbitrator authority to compel Black Hills to abide by its information-sharing obligations or to sanction it if it does not do so. Even if plaintiffs' claim for breach of section 2.6 amounts to a "discovery issue" in the context of the arbitration, there is no reason to believe that the arbitration process provides plaintiffs with a remedy for breaches of section 2.6.

Black Hills' second argument is also unpersuasive. The text of section 2.6 requires Black Hills to provide access not only to books and records, but also to "facilities and employees" in the event an earn-out dispute arises. Section 2.6 is obviously not limited to "traditional" forms of books and records; it is not even limited to books and records. Rather, the inclusion of the terms "facilities" and "employees" in section 2.6 reflects a scheme of open access to a broad array of information and data to help establish who should prevail in an earn-out dispute. The Court determines that a reasonable jury could find that e-mails and employee workstations are among the sources that section 2.6 required Black Hills to make available in the event of a dispute.

Finally, plaintiffs have made a showing of damages sufficient to avoid summary judgment on this count. Because a court must draw all reasonable inferences in favor of the non-movant on summary judgment, *see Anderson*, 477 U.S. at 248, the Court determines that a reasonable jury could find that plaintiffs' ability to challenge the earn-out calculations has been eroded more than trivially by Black Hills' destruction of materials and that this setback is a source of recoverable damages.

Accordingly, the Court denies Black Hills' motion for summary judgment on count 5 of plaintiffs' second amended complaint to the extent it alleges a breach of section 2.6 of the Merger Agreement.

### 2. Plaintiffs' motion

Although genuine issues of material fact exist with regard to count 5, such that Black Hills is not entitled to summary judgment, plaintiffs have not shown that they are entitled to summary judgment on the record as it now stands. A reasonable jury could find that Black Hills

has complied with its obligations under section 2.6, Black Hills' misconception about this provision's scope notwithstanding. Section 2.6 provides that, in the event of a dispute over the earn-out calculation, plaintiffs' accountants will have access to Generation's books, records, facilities and employees "to the extent required by [these accountants] to review the applicable Earn-Out Period Financial Statements and [Black Hills'] Proposed Earn-Out Calculation." Although plaintiffs identify certain destroyed documents they contend may have been needed for these purposes, a reasonable jury could conclude that plaintiffs' accountants in fact had all the materials they needed to carry out the work section 2.6 envisioned for them. Accordingly, the Court denies plaintiffs' motion on count 5.

**F.      Alleged negligent spoliation of evidence (count 6)**

Count 6 of the second amended complaint is a tort claim for negligent spoliation of evidence. Plaintiffs' claim in this count is premised on the same acts as count 5: namely, that Black Hills allowed numerous e-mail back-up tapes to be destroyed before preservation periods set by an internal policy had run; destroyed other tapes after this suit was filed; and failed to preserve employee workstations. These actions, plaintiffs allege, substantially impaired their ability to challenge Black Hills' earn-out calculations and to prove their case.

**1.      Defendant's motion**

In support of its motion, Black Hills argues that plaintiffs cannot satisfy any of the elements of a negligence claim. Illinois law, which the Court has already ruled governs this aspect of the case, *see Forsythe*, 2007 WL 805217 at *8-9, does not recognize a separate tort of spoliation; rather, "an action for negligent spoliation is stated under negligence law." *Village of*

*Roselle v. Commonwealth Edison Co.,* 368 Ill. App. 3d 1097, 1113, 859 N.E.2d 1, 15 (2006)

(*citing Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 194, 652 N.E.2d 267, 270 (1995)).

Black Hills first argues that plaintiffs cannot show either of the sequential steps needed to establish a duty to preserve evidence—which Illinois law makes a question of law for the Court to determine. *See Pelham v. Griesheimer*, 92 Ill. 2d 13, 18-19, 440 N.E.2d 96 (1982). The first of these steps, sometimes called the "relationship" prong of the duty element, may be met by an agreement or contract or by the defendant's voluntary assumption of a duty, among other circumstances. *See Village of Roselle*, 368 Ill. App. at 1113, 859 N.E.2d at 15. Plaintiffs counter that the relationship prong is satisfied by sections 2.3 and 2.6 of the Merger Agreement and by Black Hills' voluntary assumption of a duty by virtue of its retention policy. Plaintiffs make no serious argument and cite no authority in support of their contention the Black Hills voluntarily assumed a duty. The Court is not persuaded that Black Hills' retention policy was narrowly focused enough that it amounts to voluntary assumption of a duty to preserve certain evidence. *Cf. Stinnes Corp. v. Kerr-McGee Coal Corp.*, 309 Ill. App. 3d 707, 712-16, 722 N.E.2d 1167, 1171-74 (1999) (finding plaintiff had adequately alleged voluntary assumption of a duty in defendant industrial firm's tagging and initial preservation of equipment that had been involved in a workplace accident). Section 2.6 of the Merger Agreement, however, easily satisfies the "relationship" prong of the duty, which may be met by an agreement or contract. *See Village of Roselle*, 368 Ill. App. at 1113, 859 N.E.2d at 15.

Black Hills' argument that plaintiffs cannot meet the second, "foreseeability" prong of the duty element is unavailing. Because it a component of the duty element in spoliation cases, foreseeability appears to be a question of law—notwithstanding the requirement that, in pleading this aspect of the duty to preserve evidence, the plaintiff must allege facts describing the

18

circumstances under which a reasonable person in defendant's position should have foreseen that the evidence was material to a potential civil action. *Village of Roselle*, 368 Ill. App. 3d at 1113, 859 N.E.2d at 16. The parties' agreement in section 2.6 that Black Hills would make available "books, records, facilities and employees" in the event of an earn-out dispute, especially when read in light of the Court's determination that "discovery" disputes over Black Hills' compliance with section 2.6 were not subject to arbitration, means that a reasonable person or entity in Black Hills' position could have foreseen that the e-mail tapes and workstations would be material to litigation. Black Hills' argument that section 2.6 did not specifically cover e-mail tapes and employee workstations cuts no ice; these sources fit within the broad definition of "books, records, facilities and employees." Moreover, Black Hills' alleged destruction of some of the materials at issue *after* this suit was filed makes the foreseeability inquiry with regard to those materials almost redundant.

With regard to the other elements of negligence, Black Hills' arguments are similarly unavailing. To establish proximate causation in this context, a plaintiff must show that but for the loss or destruction of the evidence at issue, it had a reasonable probability of success on its underlying claim. *See Boyd*, 166 Ill. 2d at 196, 652 N.E.2d at 271. The Illinois Supreme Court made it clear in *Boyd* that the causation requirement in this context is not an onerous one: "only if the plaintiff could not prevail in the underlying action even with the lost or destroyed evidence" does he fail to establish causation; the purpose of the requirement is to "prevent[] a plaintiff from recovering where it can be shown that the underlying action was meritless." *Id*. at n.2. Black Hills' narrow argument that plaintiffs have all the evidence they need to verify the earn-out calculation misses the point. Other evidence of intentional actions to undercut the earn-out, which may not be readily reflected in the earn-out calculation per se, might have been lost.

19

A reasonable jury could find that but for such evidence, plaintiffs could have prevailed in a claim for breach of section 7.7(v). In any event, the Court cannot now conclude that plaintiffs' underlying suit is obviously meritless, which was the *Boyd* court's animating concern with regard to causation in the spoliation context.

As for damages, Illinois law requires that plaintiff show "a nexus between the defendant's loss or destruction of the evidence and the plaintiff's ability to prove his underlying suit." *Village of Roselle*, 368 Ill. App. 3d at 1118, 859 N.E.2d at 20. Perhaps because a spoliation claim is at this stage is an exercise in contrafactual reasoning, the damages analysis is closely linked to causation analysis. *See id.* at 1118-19, 859 N.E.2d at 20. The Court concludes that a reasonable jury could find plaintiffs have suffered damages from Black Hills' alleged destruction of e-mail tapes and workstations. Therefore, entry of summary judgment for Black Hills on this count is inappropriate.

### 2. Plaintiffs' motion

Although genuine issues of material fact exist with regard to count 6, such that Black Hills is not entitled to summary judgment, plaintiffs have not shown that they are entitled to summary judgment on the same count. A reasonable jury could find that Black Hills was not negligent in destroying the materials at issue. Although the Court's denial of Black Hills' motion for summary judgment on negligence rested in part on the conclusion that plaintiffs' underlying claims are not obviously meritless, it does not follow that they are entitled to summary judgment. In short, it would be inappropriate for the Court to enter summary judgment for plaintiffs on their negligent spoliation of evidence claim before their underlying

claims—principally, for breach of section 7.7(v) of the Merger Agreement—are put to the test. Accordingly, the Court denies plaintiffs' motion on count 6.

## G.     Breach of implied covenant of good faith and fair dealing (count 7)

In the final count of the second amended complaint, plaintiffs allege in the alternative that Black Hills breached the implied covenant of good faith and fair dealing that attached to the Merger Agreement under Delaware law.  Specifically, plaintiffs allege that Black Hills availed itself of the Merger Agreement's silence on the key issues of Generation's capital structure, interest rates on any intercompany debt, access by Generation's president to bank credit facilities, and adjustments to earn-out calculations to undercut the earn-out consideration they received.

At first blush, the implied covenant of good faith and fair dealing, which attaches to every contract governed by Delaware law, *see Chamison v. HealthTrust, Inc.-Hospital Co.*, 735 A.2d 912, 920 (Del. Ch. 1999), offers plaintiffs a useful theoretical hook.  "This implied covenant is a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain."  *Id*.   But Delaware law commands that courts resort to implying contractual terms under this duty only rarely, in cases that "turn[] on issues of compelling fairness."  *Cincinnati SMSA Ltd. Partnership v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998).  Crucially, the presence of an express term that governs the subject of the parties' dispute means that the implied covenant can have no bearing on the case.  *See Dave Greytak Enterprises, Inc. v. Mazda Motors of Am., Inc.*, 622 A.2d 14, 22-23 (Del. Ch. 1992).

The Court determines that the Merger Agreement's express prohibition on intentional steps by Black Hills to undercut the earn-out consideration precludes plaintiffs from resorting to the implied covenant of good faith and fair dealing to challenge that same alleged activity. Section 7.7(v) provides plaintiffs a sufficiently concrete ground on which to challenge Black Hills' actions, and plaintiffs' claim for breach of key provisions has survived summary judgment. Accordingly, the Court grants Black Hills' motion for summary judgment on Count 7 of the second amended complaint and denies plaintiffs' cross-motion on this count.

### Conclusion

For the foregoing reasons, the Court grants Black Hills' motion for summary judgment [docket no. 184] with regard to counts 2, 4, and 7 of the second amended complaint but otherwise denies the motion, and denies plaintiffs' cross-motion [docket no. 188] in its entirety. The case remains set for trial on March 31, 2008 at 9:45 a.m. The final pretrial order is to be filed by March 6, 2008, and the final pretrial conference was previously set for March 19, 2008 at 3:30 p.m. A status hearing is set for February 21, 2008 at 9:30 a.m. for the purpose of discussing the anticipated length of trial and the possibility of settlement. Principal counsel are directed to appear and to be prepared to discuss, with specificity, what witnesses they expect to call and how long they propose to take to present their respective cases. Counsel are directed to confer regarding those points in advance of February 21.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 8, 2008