# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

GERALD R. FORSYTHE, MICHELLE R. )
FAWCETT, MARSHA FOURNIER, MONICA )
BRESLOW, MELISSA S. FORSYTHE, and )
JOHN W. SALYER, JR., )
)
      Plaintiffs, )
)
vs. )   Case No. 04 C 5361
)
BLACK HILLS CORPORATION, )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      The plaintiffs sued Black Hills Corporation in 2004, alleging breaches of a merger agreement. One of plaintiffs' claims were submitted to arbitration; other claims were litigated in this Court and ultimately were settled. On September 18, 2008, an arbitrator awarded plaintiffs $4,095,370. Plaintiffs have moved to confirm the arbitration award, and Black Hills has moved to modify or vacate the arbitration award under the Federal Arbitration Act, 9 U.S.C. §§ 9-11. For the reasons set forth below, the Court grants plaintiffs' motion and denies Black Hills' motion.

## Facts

      In 2000, plaintiffs Gerald Forsythe, Michelle Fawcett, Marsha Fournier, Monica Breslow, Melissa Forsythe, and John Salyer, Jr. sold Indeck Capital, Inc. to defendant Black Hills Corporation. The parties' merger agreement provided for an immediate

payment to plaintiffs in the form of Black Hills stock, plus "earn-out" compensation of up to $35 million in additional Black Hills stock to be issued over the following four years. Although Black Hills paid earn-out compensation in 2000 and 2002, plaintiffs refused the 2003 earn-out compensation offered by Black Hills ($3,875,174) because they disputed the company's calculation.

In August 2004, plaintiffs filed suit against Black Hills alleging breaches of the merger agreement and seeking about $29 million in unpaid earn-out compensation. Black Hills moved to dismiss the complaint, contending that all the claims were subject to arbitration under the terms of the merger agreement.

On March 21, 2005, the Court ruled that two of plaintiffs' claims were subject to arbitration, but the remainder were not. The arbitrable claims centered around plaintiffs' allegation that Black Hills artificially depressed the earn-out amount in 2003 by improperly "writing down" the carrying value of an asset called Las Vegas Cogeneration Unit II ("LV II") and an issue concerning the timing of tax refund (the tax refund claim was later dropped). The Court retained jurisdiction over plaintiffs' other claims, and litigation on those claims proceeded.

The parties engaged the services of KPMG, LLP as arbitrator. The engagement letter for KPMG outlined the scope of the arbitration, stating that the "calculation of the 'earn-out' payment required is in dispute." Pl. Ex. 3 at 1-2. The dispute over the calculation was "the sole item submitted for dispute resolution." *Id.* at 2.

On March 21, 2008, the parties entered into a settlement agreement. The agreement provided that in exchange for $16 million in Black Hills common stock, the plaintiffs agreed to release all claims, "excluding the claims in Arbitration, which are not

released." Pl. Ex. 5 at 5. The parties also agreed that the $16 million would count against the cap on earn-out compensation of $35 million set forth in the merger agreement. Black Hills had previously paid plaintiffs $2,365,698 and $5,084,034 in earn-out compensation for the years 2000 and 2002 respectively. As a result, any arbitration award could not exceed $11,550,268.

After the settlement, the parties had one more chance to submit arguments to the arbitrator. Plaintiffs contended that they were entitled to up to $21,882,444 in earn-out compensation, in addition to the settlement payment, because Black Hills had artificially depressed the value of the earn-out by improperly writing down the value of LV II. Black Hills argued that its writing down of that asset was proper and that plaintiffs were not entitled to any further compensation. Black Hills also contended that it had understated the impairment of LV II. As a result, Black Hills argued, any award to the plaintiffs should be offset by a percentage of the understatement.

On September 19, 2008, the arbitrator determined that "the calculation of the 'earn-out' payment due to the [plaintiffs] should not be adjusted with respect to the dispute surrounding the impairment of [LV II]." Pl. Ex. 7 at 3. The arbitrator then ordered that Black Hills pay plaintiffs $4,095,370 in Black Hills stock, the amount Black Hills had previously calculated as the 2003 earn-out compensation due to plaintiffs.

On October 15, 2008, plaintiffs moved this Court to confirm the arbitration award. A few days later, defendants moved to vacate or modify the award.

## Discussion

"Judicial review of arbitration awards is extremely limited." *Johnson Controls, Inc. Systems & Servs. Div. v. United Ass'n of Journeymen & Apprentices of Plumbing &*

3

*Pipefitting Industry of U.S. & Canada, AFL-CIO*, 39 F.3d 821, 824 (7th Cir. 1994). A court may modify an award only if there was an evident material miscalculation or material mistake, the arbitrators issued an award on a matter not submitted to them, or the award contains some imperfection of form that does not affect the merits of the controversy. 9 U.S.C. § 11. In addition, a court may vacate an award "where the arbitrators exceeded their powers." *Id.* § 10(d). Upon application by a party to the arbitration, a court may enter an order confirming the award so long as it is not vacated or modified. *Id.*§ 9.

A court will not enforce an award that is "clearly beyond the arbitrator's power," nor will it "overturn an award because [it] disagrees with the decision's legal or factual basis." *Carpenter Local No. 1027, Mill Cabinet-Indus. v. Lee Lumber & Bldg. Material Corp.*, 2 F.3d 796, 798 (7th Cir. 1993). Doubts about the arbitrator's authority are resolved in favor of arbitration. *Id.*

**A.  Scope of arbitration issue**

Black Hills contends that the arbitrator's award of earn-out compensation to plaintiffs was outside the scope of the Court's order defining the arbitrable claims. On March 21, 2005, the Court ruled that two of plaintiffs' claims in this suit were to be submitted to arbitration: the claims "that Black Hills improperly wrote down the carrying value of certain property, which had the effect of Black Hills Generation [Company]'s reducing net income, and that Black Hills failed to give Black Hills Generation timely

4

credit for an income tax refund." Order of Mar. 21, 2005 at 1.[1] Because those two claims amounted to "objections to the applicable financial statements," the Court determined that they were within the scope of the arbitration provision. *Id.*

Although Black Hills contends that the write-down dispute was not related to the earn-out, that dispute unquestionably was determinative of the 2003 earn-out compensation due to plaintiffs. Payment of the 2003 earn-out was not finalized due to the write-down dispute. For that reason, disposition of the claim in arbitration would effectively determine what amount was due to plaintiffs for that year. The arbitrator determined that Black Hills' write-down of LV II was reasonable and that the earn-out compensation due to plaintiffs for 2003 should not be adjusted, as plaintiffs had requested. *See* Pl. Ex. 7 at 4. As a result, the arbitrator directed an award of the remaining, undisputed amount of earn-out compensation. This arbitrator's award was tied directly to his determination of the write-down issue.

In addition, the engagement letter authorizing KPMG to act as arbitrator expressly recognized that "[t]he calculation of the 'earn-out' payment required" was being submitted to arbitration. Black Hills contends that the letter is ambiguous, and that the parties' intent should govern. The parties, Black Hills argues, did not intend for the arbitrator to determine the earn-out payment. Instead, the only issue to be arbitrated was the dispute concerning the write-down of LV II. Although Black Hills points to several instances in which both parties characterized the dispute as revolving

---

[1] Black Hills Generation Company was the entity that took over the operations of Indeck Capital, Inc., the company that plaintiffs sold to Black Hills. The earn-out compensation was based on the net income of Black Hills Generation Company.

around the write-down of LV II, it cannot avoid the simple fact that the issue was inextricably bound up with the amount of the 2003 earn-out payment. In any event, as the Court has noted, doubts about the scope of arbitration are resolved in favor of arbitration. The Court concludes that the award was not outside the scope of the arbitration agreement or the Court's order directing arbitration.

**B.     Double recovery issue**

"Double recovery constitutes a materially unjust miscalculation which may be modified under section 11 of the Federal Arbitration Act." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994). The Court may, therefore, modify the award if it determines that the award represents a double recovery for plaintiffs.

Black Hills contends that the Court should modify the award because it gives plaintiffs damages on a claim on which they were paid via the settlement agreement. In the settlement agreement, plaintiffs agreed to release all claims against Black Hills, except for those that were in arbitration, in exchange for $16 million. *See* Pl. Ex. 5. The parties agreed that the settlement payment would count against the earn-out cap of $35 million outlined in the merger agreement and that any arbitration award would be limited by that cap. Black Hills contends that because the settlement encompassed all earn-out payments, the arbitration award is unfairly duplicative of the settlement payment.

The settlement agreement expressly excluded all the claims that were in arbitration at the time the agreement was executed. *Id.* at 5. As noted above, the dispute over the write-down of LV II, which was being arbitrated, was intertwined with

6

the issue of payment of the 2003 earn-out. If the settlement agreement foreclosed recovery by plaintiffs on the 2003 earn-out, they would not have been able to pursue their arbitration claim over the LV II write-down, which, in turn, would have rendered meaningless the settlement agreement's term preserving the claims being arbitrated. Furthermore, the fact that the parties agreed that the settlement would limit the earn-out amount recoverable via the arbitration reflects that they contemplated that the arbitrator might award plaintiffs earn-out compensation in his determination of the impairment dispute.

Black Hills also contends that it had an understanding with plaintiffs that the earn-out compensation had been paid in full via the settlement. This argument is contradicted by the parties' own submissions to the arbitrator after the settlement. Although each party's summation presented to the arbitrator focused primarily on Black Hills' accounting process, the demands both sides made show that the 2003 earn-out compensation was still understood to be in issue. In their summation, plaintiffs claimed that they were entitled to earn-out compensation in excess of the $16 million they received via the settlement. Def. Ex. 15. Black Hills, in turn, insisted that it was not liable for any damages to plaintiffs arising from the LV II write-down. Pl. Ex. 6. These submissions are consistent with plaintiffs' position regarding what the settlement did and did not preclude.

**C.      Issue of the arbitrator's power**

Black Hills asks the Court to vacate the arbitration award under section 10 of the Federal Arbitration Act because, it contends, that the arbitrator exceeded his powers in awarding plaintiffs earn-out compensation that was the subject of a released claim. An

7

arbitrator may exceed his powers when he resolves a matter that was the subject of a settlement. *In re VMS Securities Litig.*, 21 F.3d 139, 145 (7th Cir. 1994). Black Hills contends that because the earn-out compensation was the subject of the settlement, the arbitrator exceeded his authority in awarding plaintiffs additional 2003 earn-out compensation. As the Court has discussed, however, the settlement specifically excluded the claims that were already pending before the arbitrator, which, as the Court has determined, included the ultimate amount of the 2003 earn-out payment. As a result, the arbitrator's award did not exceed his power.

**D.      Waiver, estoppel, and unclean hands issues**

Black Hills argues that plaintiffs should be precluded from confirming the arbitration award on the grounds of waiver, estoppel, and unclean hands. Black Hills contends that because plaintiffs knew that the settlement agreement released all claims against Black Hills, they cannot seek enforcement of the arbitrator's duplicative award. Because the Court has found that the arbitration award was not duplicative, it need not further address these contentions.

**Conclusion**

For the foregoing reasons, the Court grants plaintiffs' motion to confirm the arbitration award [docket no. 225] and denies Black Hills' motion to modify the award [docket no. 230].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 3, 2008